IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SELENA HOWARD; DARIOUS LEGGETT; and
ANTRINET LEGGETT                                                                          PLAINTIFFS

V.                                                         CIVIL ACTION NO.:  2:19-cv-84-KS-MTP

FORREST COUNTY;
CHEY SUMRALL, individually and
In his official capacity; BLAKE BASS,
Individually and in his official capacity                                         DEFENDANTS

FORREST COUNTY, MISSISSIPPI, CHEY SUMRALL,
AND BLAKE BASS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO STRIKE DISCOVERY

Come now, Forrest County, Mississippi, Chey Sumrall, and Blake Bass, by and through counsel, and respectfully submit their Response in Opposition to Plaintiffs' Motion to Strike Discovery as follows:

PROCEDURAL BACKGROUND

This matter arises out of a September 27, 2017, encounter between the parties allegedly resulting in Darious Leggett and Antrinet Leggett being Tased and arrested. *CM/ECF Doc. No.* 2, *Compl*. at ¶¶ 26-27. In particular, Plaintiffs, Selena Howard, Darious Leggett, and Antrinet Leggett contend that during their encounter with Forrest County Sheriff's Deputies they were subjected to false arrest, First Amendment violations, racial discrimination, and excessive force. *Id*. at pp. 7-12.

On August 9, 2019, the Court entered a Case Management Order (CMO) in this cause, setting a discovery deadline for March 2, 2020, and motion deadline of March 16, 2020. *CM/ECF Doc. No.* 8.

Only ten (10) days later, on August 19, 2019, Defendants propounded Interrogatories and Requests for Production of Documents to Plaintiffs. Plaintiffs did not timely respond to the written discovery requests. *CM/ECF Doc. Nos*. 11-12.

On January 17, 2020, Defendants timely sent a Designation of Expert which encompassed Mr. Ashley's CV, fee schedule, and included that Mr. Ashley would render an opinion as the Plaintiffs' excessive force claims. *CM/ECF Doc. No*. 17. At that time, a Report could not be generated as discovery was not yet completed.

On February 12, 2020, Defendants' counsel again requested Plaintiffs' discovery responses to interrogatories **and** deposition dates, but did not receive any response from Plaintiffs. *Correspondence*, attached hereto as **Exhibit A**.

On February 17, 2020, Defendants' counsel again forwarded a written request that Plaintiff provide the discovery responses as well deposition dates for Plaintiffs. *Id*. Additionally, the undersigned counsel stated an intention to file a Motion for Continuance of the trial setting. *Id*.

On February 26, 2020, Defendants filed an Unopposed Motion for Continuance of the Trial Setting. *CM/ECF Doc. No*. 19. The court granted the Motion and continued the discovery deadline until April 1, 2020. *CM/ECF Doc. No*. 20.

On March 3, 2020, Defendants' counsel once again sent Plaintiffs' counsel another request for the delinquent discovery responses and deposition dates, but did not receive a response. *Correspondence*.

Subsequently, on March 5, 2020, Defendants' counsel once again sent Plaintiffs' counsel a Good Faith Letter, pursuant to Rule 26 requesting Responses and deposition dates. *Id*.

On March 6, 2020, Plaintiffs' counsel's office finally replied and a deposition date of March 27, 2020, was agreed upon. *Id*. Additionally, on March 10, 2020, Plaintiffs filed their Notice of Service of Interrogatory Responses and the same was sent to Defendants' counsel. *CM/ECF Doc. Nos*. 21-23.  Plaintiffs filed their Notice of Service of Request for Production Responses on April 16, 2020, and the same was sent to Defendants' counsel. *CM/ECF Doc. No. 33*.

Subsequently, due to the pandemic and uncertainty of the situation, the previously scheduled depositions were cancelled and a new date was agreed upon by all counsel – April 17, 2020. *Correspondence*.

Defendants requested an extension of the discovery deadline to May 1, 2020, which was granted. Despite the new deposition date, due to scheduling conflicts, the depositions were re-scheduled for April 27, 2020 giving Defendants' expert a mere four (4) days to review deposition transcripts for sworn testimony from parties.[1] *Correspondence*.

---

[1] Additionally, there was a time delay between receiving the transcripts.

On May 1, 2020, Defendants sent their second supplemental discovery responses, which included the Expert Report by Steve Ashley, to Plaintiffs. Defendants timely supplemented the expert report prior to the discovery deadline. *CM/ECF Doc. No.* 40.

On May 4, 2020, Plaintiffs filed the instant Motion to Strike and Supporting Memorandum requesting the Expert Report be stricken as incompliant with Rule 26 of the Federal Rules of Civil Procedure. For the all the reasons outlined herein below, Defendants respectfully request the court deny Plaintiff's motion.

## ARGUMENT

Plaintiffs filed a Motion to Strike Defendants' expert designation of Steve Ashley asserting a failure to comply with Rule 26 of the Federal Rules of Civil procedure. In particular, Plaintiff alleges that Defendants expert designation should be stricken as Defendants did not serve a Report contemporaneous with the filing of the designation. *Id.* at p.1. Plaintiffs' Motion must be denied.

As explained herein below, the very reason for the delay in Ashley's Report being submitted was Plaintiffs' failure to provide written discovery responses and submit to depositions. Importantly, a short extension of time for Plaintiffs to depose Ashley would cure any prejudice (though none is asserted) to Plaintiffs.

**I.   Rule 26**

Rule 26 requires parties to disclose the identity of any person who will provide expert testimony at trial. Fed. R. Civ. P. 26(a)(2)(A). "[I]f the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," the proponent of the expert

4

testimony must provide a written report prepared and signed by the witness. Fed. R. Civ. P. 26(a)(2)(B).

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (3), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). When determining whether to strike an expert's testimony for a party's failure to properly and timely disclose required information, the Court considers the following factors: (1) the importance of the testimony, (2) the prejudice to the opposing party if the Court allows the testimony, (3) the possibility of curing the prejudice with a continuance, and (4) the explanation for the failure to comply with the discovery rules. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 572 (5th Cir. 1996); *Barnett v. City of Laurel*, No. 2:18-CV-92-KS-MTP, 2019 WL 5788312, at *2 (S.D. Miss. Nov. 6, 2019).

    A.    <u>**Importance of the Testimony**</u>

Mr. Ashley is an expert and instructor in weapons and tactics used by police officers. Mr. Ashley's report and testimony are important as he gives insight into the mechanization of the TASERs used by Deputies Bass and Sumrall and analyzes the TASER report in conjunction with the Plaintiffs' allegations. Additionally, his report analyzes the alleged use of force by the Deputies with the policies and procedures of Forrest County, Mississippi and if those policies and procedures are consistent with national standards.

5

The report explains in great detail the type of TASERs that were used during the incident and how to use each TASER, which is relevant when looking at: (1) the TASER reports; (2) the coordinating times on the TASER reports; (3) the length of and potential use of each "trigger" event; (4) use of prongs; (5) use of TASER cartridges; (6) length of prongs; and (7) ideal discharge distance. *Id.* at *CLT-HOWARD-000981-001000*. Such information is pertinent to the case.

For instance, Mr. Ashley identifies the relevant trigger events for the trier of fact to look at by determining the "drift time" for each TASER model, which then points to the relevant time periods on the TASER report.[2] Additionally, the expert points out unrealistic events that could not have occurred when using these TASER models. Such as claims made by Antrinett Leggett who states that a probe struck her hand, however a TASER only shoots probes if there is an inserted cartridge. *CM/ECF Doc. No*. 41-1, *CLT-HOWARD-000999*. Had Dep. Sumrall shot his probes at Mrs. Leggett, he would have had to go to the Sheriff's Department and request another cartridge, just as Dep. Bass did after the incident because Dep. Bass did use his TASER probes[3]. *Id.* Furthermore, even if a probe had grazed Antrinett Leggett, she could not have received an electrical shock as she alleges in her pleadings since a "completed circuit requires two probes." *Id.* at *CLT-HOWARD*-001000; *CM/ECF Doc. No*. 2, ¶ 26. Such inferences and knowledge would be

---

[2] It's noted that a TASER has time "drifts". Mr. Ashley gives a detailed analysis on the potential time drift of each TASER to show the pertinent trigger events. *CLT-HOWARD-000994-000998*.

[3] Furthermore, each Plaintiff testifies that the TASER was shot twice, however if they were shot by the same officer, it would have required the officeR have two (2) cartridges. *CM/ECF Doc. No*. 41-1, *CLT-HOWARD-000913.* There is no indication that a second cartridge was fired. *Id*.

difficult to discern for a lay person or even officers who are not trained to point out these types of specific facts in their testimony.

Furthermore, Mr. Ashley assesses the Forrest County Sheriff's Departments written procedure of Use of Force and whether Deputy Bass and Deputy Sumrall's actions were consistent with the same. *Id*. at *CLT-HOWARD-001016-1020.* Mr. Ashley also reviews the adequacy of the officers' training on law enforcement use of force procedures. This is based off of his familiarity with other training programs throughout the country. *Id*. Thus, Mr. Ashley's expert opinion is extremely important to refute the Plaintiffs' use of force claims.

### B. Potential Prejudice to Plaintiffs

Plaintiff's Motion does not articulate how they will be prejudiced under the circumstances. As explained in Section D herein, the reason for the delay was Plaintiffs' failure to provide discovery responses and sit for depositions. Regardless, Plaintiffs have been given a copy of the Report now that the discovery needed to generate the Report has been completed. As noted below, any potential prejudice could easily be relieved by allowing Plaintiff an opportunity to depose Mr. Ashley (Plaintiffs have never sought to do so).

### C. Continuance

Again, to the extent that Plaintiff could articulate prejudice by allowing Ashley to testify without providing the contemporaneous report is mooted if the Court simply allows Plaintiff the time and opportunity to depose Ashley. The Defendants do not object to this should Plaintiff desire to depose Plaintiff.

### D.     Explanation

Admittedly, Defendants did not produce an expert report contemporaneously with their expert designation, however, this was not dilatory conduct by Defendants. The cause of the delay was due to lack of discovery responses and depositions. Mr. Ashley did not have the benefit of sworn testimony to form any sort of opinion regarding the incident as he had little information to draw a factual basis. As this court is well aware, use of force is fact intensive. *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Mr. Ashley could only glean minimum facts from the incident report narrative by Dep. Bass and Plaintiffs' Complaint.

As shown above, Defendants propounded their discovery requests on August 19, 2019, yet Plaintiffs did not send their Interrogatory Responses until March 10, 2020 and Request for Production Responses until April 16, 2020. *Correspondence*.

Additionally, Plaintiff states in his supporting Memorandum that:

> It is anticipated that the Defendants will argue that the disclosure could not be made before the Defendants deposed the Plaintiffs. If such was true, the Defendants should have deposed the Plaintiffs sooner or requested more time.

*Memorandum*, p. 5. Yet, Defendants' counsel repeatedly asked for discovery responses and deposition dates as early as February 12, 2020. *See, Correspondence*. Defendants' counsel reached out to Plaintiffs' counsel again on February 17, 2020, and March 3, 2020, asking for the same, yet Plaintiffs' counsel was unresponsive to any of those requests. *Id*. Finally, in an effort to move the case along, Defendants' counsel sent a Good Faith letter

8

on March 5, 2020, at which point, Plaintiffs' counsel's office finally agreed to deposition dates. *Id*.

Due to the arising panic of the pandemic those depositions were cancelled until April 17, 2020, as counsel was still in the process of determining how to utilize zoom for video depositions. *Id*. These depositions were subsequently again re-noticed, due to scheduling conflicts by Plaintiffs' counsel. *Id*. At which point, once the depositions occurred on April 27, 2020, Mr. Ashley only had four (4) days to prepare an Expert Report based on sworn testimony of the officers and Plaintiffs. *Id*.

Additionally, Defendants filed three (3) different motions to extend deadlines in attempts to fully litigate the case. It is clear from the attached correspondence that Defendants' counsel made every effort to move the case along, made various attempts to get discovery responses, set depositions in a timely fashion, and extended deadlines when they could not. Thus, Defendants late supplementation of the report was not due to any intentional conduct to prejudice Plaintiffs, but instead was an issue of circumstances.

Furthermore, Plaintiffs knew about the defense's expert, Steve Ashley as he was timely disclosed to them on January 17, 2020, the Defendant's expert deadline. Yet, Plaintiffs' never indicated they wished to depose Mr. Ashley; however, should they desire to do so, Defendants would be unopposed to reopening the discovery period to cure any potential prejudice that may exist.

Simply put, this is not a case of "dilatory conduct" by Defendants in providing the Report, rather, the Report simply could not be generated without the discovery that

Defendants repeatedly had to badger Plaintiffs to provide. To allow Plaintiffs to delay discovery and then complain about the Report is unjust. Defendants clearly had a substantial justification for submitting the Report and this Court should not strike the same.

## II.     Rule 702

Finally, Mr. Ashley's report is admissible under Rule 702 of the Federal Rules of Civil Procedure. The expert report provides important testimony other than just determining if the force was excessive or not. As stated in Section II(A), Mr. Ashley's expert report provides useful information with regards to the mechanization, use of the TASERs, and readings of the TASER report. Additionally, the report analyzes if the use of force by the deputies correlates with the policies and procedures of Forrest County, Mississippi. Rule 702 of the Federal Rules of Civil Procedure provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Civ. P. 702. To determine the credibility of the analysis, court look to "the methodology, the facts underlying the expert's opinion, link between facts and conclusion." *Barnett*, 2019 WL 5788312, at *3; *citing Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). Furthermore, as noted by the Court in their *Order*, the "Fifth Circuit has specifically held that the reasonableness of an officer's use of force is a legal

10

conclusion." *Pratt v. Harris County, Tex.*, 822 F.3d 174, 181 (5th Cir. 2016)(citations omitted); *see also*, CM/ECF Doc. No. 43, *Order*. "However, Plaintiff may introduce expert testimony as to proper police procedures, and whether Defendants' actions were consistent with those procedures." *Barnett v. City of Laurel*, No. 2:18-CV-92-KS-MTP, 2019 WL 5788312, at *4 (S.D. Miss. Nov. 6, 2019)(citations omitted).

First, Mr. Ashley notes his methodology used in undertaking his expert testimony. *CM/ECF Doc. No.* 41-1, *CLT-HOWARD-000963*. He states that his testimony is only used to "assist the trier of fact to understand the evidence" or make a determination as to a factual issue since he has specialized knowledge. *Id*. Mr. Ashley does not intend to draw any legal conclusions, but to merely use his expertise to assist those who are unfamiliar with police procedures, law enforcement situations, and weaponry used by officers.

Mr. Ashley intends to give his expert opinion on what a reasonable officer would do in the same situation as Deputies Sumrall and Bass. *CM/ECF Doc. No.* 41-1, *CLT-HOWARD-000957*. He uses the facts from the sworn deposition testimony to note the stressors of the incident with the parties which include dogs off of leashes, aggressive behavior by Plaintiff, Darious Leggett, and assaultive interference by Plaintiff, Antrinett Leggett. These types of known human factors and thought processes from officer training are inherent in determining the perception of the officers at the time the force was used. These aspects of the case can only be pointed out by a former law enforcement officer and use of force instructor who routinely teaches courses on how officers can better assess situations and manage risks.

Furthermore, besides the sworn testimony, Mr. Ashley looked at the extensive documentation that has all been provided to Plaintiffs' counsel, including the Justice Court file with the sworn affidavits for post-arresting Plaintiffs and the incident narrative written by Blake Bass immediately after the occurrence. Mr. Ashley looks at the location of the Plaintiffs' residence, where the dogs were located, and the weather and lighting during the time. These are all factors that may attribute to the deputies' apprehensiveness of the situation. Thus, it is clear that Mr. Ashley points out all the facts to help the trier of fact make a determination as to whether the deputies used excessive force. Again, these are points that a lay person or deputies may not be able to ascertain without the help of an expert with specialized knowledge.

Plaintiffs assert in their Memorandum to strike that "Mr. Ashley totally and completely disregards the Plaintiffs' deposition testimony" and "does not cite the Plaintiffs' depositions a single time while giving the facts of the incident." *Memorandum*, at p. 5. To the contrary, Mr. Ashley gives a summary of Darious Leggett, Selena Howard, and Antrinett Leggett's deposition, just as he did for the Defendants. *CM/ECF Doc. No. 41-1, CLT-HOWARD-000974-000978*. Furthermore, Mr. Ashley notes in his report that:

> Where practical I rely upon undisputed facts, and attempt to indicate those that are disputed when appropriate. Where facts and evidence appear to directly contradict statements and assertions of any party to this action, I attempt to point out the contradictions, and place them into context. Any apparent assumption of truth or implied assignment of veracity by me is undertaken solely for the purpose of analysis and the rendering of opinion, and is not intended to usurp the role of the Jury or other trier of fact.

*Id*. at *CLT-HOWARD-000936*. It is clear from the report, that Mr. Ashley, in no way desires to be the trier of fact or determine credibility. Instead, he actually attempts to point out the discrepancies in testimony or documents and notes that any assumptions made by him is strictly for context purposes.

Additionally, Mr. Ashley would regularly develop policies and procedural guidelines for law enforcement agencies and continues his education by attending conferences. *Id*. at *CLT-HOWARD-000958-000962*. As such, he is familiar with use of force policies used by national law enforcement agencies. Mr. Ashley is able to speak to whether the use of force by the deputies is consistent with the policies of Forrest County, Mississippi. *Id*. at *CLT-HOWARD-001016*. The report additionally analyzes whether Forrest County's policies are consistent with other law enforcement agencies around the county. *Id*. Thus, Mr. Ashley's expert report is admissible on the basis that his methodology includes pointing out important factors for the trier of fact to consider. It additionally includes facts as to the TASER and the TASER report which is important to refute Plaintiffs' claims.

In the alternative, to the extent the report contains any concrete conclusions on whether Dep. Sumrall and Dep. Bass' use of force was excessive or not, Defendants request that this Honorable Court only preclude those portions of the report. Defendants respectfully request that all other parts, including the background facts, TASER review, practices and procedural guidelines of use of force (policies), and review of deputies training, remain.

## CONCLUSION

For all of the reasons cited herein, Defendants, Forrest County, Mississippi, Chey Sumrall, and Blake Bass, respectfully request that Plaintiff's Motion to Strike Discovery is due to be denied, or in the alternative, the Court only preclude the portions of the report that include Mr. Ashley's conclusions as to whether Dep. Sumrall and Dep. Bass used excessive force or not.

**DATE:**     May 18, 2020.

Respectfully submitted,

**FORREST COUNTY, MISSISSIPPI, CHEY SUMRALL, AND BLAKE BASS**

BY:   */s/ Christina J. Smith*
        One of Their Attorneys

WILLIAM R. ALLEN (MSB #100541)
CHRISTINA J. SMITH (MSB #105483)
Allen, Allen, Breeland & Allen, PLLC
214 Justice Street
P. O. Box 751
Brookhaven, MS  39602-0751
Tel. 601-833-4361
Fax 601-833-6647
Email:  wallen@aabalegal.com
Email:  csmith@aabalegal.com

**CERTIFICATE**

I, the undersigned of Allen, Allen, Breeland & Allen, PLLC, hereby certify that on this day, I electronically filed the foregoing Response in Opposition to Plaintiffs' Motion to Strike with the Clerk of the Court using the ECF system, which gave notice of the same to the following:

>Daniel M. Waide, Esq.
>Johnson, Ratliff & Waide, PLLC
>P.O. Box 17738
>Hattiesburg, MS 39404
>dwaide@jhrlaw.net
>    *Attorney for Plaintiffs*
>
>Mary Lee Holmes, Esq.
>HOLMES, MCLELLAND & FERRAEZ, PLLC
>601 East Central Avenue
>Petal, MS 39465
>marylee@hmlawfirm.com
>    *Attorney for Defendant, Chey Sumrall, in his individual capacity*

This the 18th day of May, 2020.

>*/s/ Christina J. Smith*
>OF COUNSEL