SELENA HOWARD; DARIOUS LEGGETT;
AND ANTRINET LEGGETT

PLAINTIFFS,

v.

FORREST COUNTY; CHEY SUMRALL,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
BLAKE BASS, INDIVIDUALLY AND
IN HIS OFFICIAL CAPACITY

DEFENDANTS.

IN THE
UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CIVIL ACTION NUMBER: 2:19-CV-00084-KS-MTP

<u>RULE 26(a) REPORT OF STEVEN D. ASHLEY</u>

MAY 1, 2020

CLT-HOWARD-000948

- She felt the electricity after the one probe scratched her hand, and she still has the shakes from it. (p. 36)
- According to Ms. Leggett, after she was scratched by the probe fired from Bass' TASER, he turns and tases [sic] Darious, then takes her to the car and puts handcuffs on her. (p. 36)

*Involvement of Other Emergency Services Personnel.* Following the exchange between deputies and the plaintiffs, medics from the AAA Ambulance Service were summoned to the scene. Mr. Leggett was transported to hospital.[100] As of this date, I have no statements or reports attributable to EMS or hospital personnel.

## 9. INFORMATION FOCUS.

I draw the reader's attention to the following items, in order to specifically focus on or to underscore additional points that inform my opinions.

- When they arrived, Deputies Bass and Sumrall each saw a dog tied to a tree outside the residence.[101,102]
- Deputy Bass characterized the dog's condition as *"malnourished"*, and testified that, *"The dog was very skinny and didn't have no [sic] food or water."*[103]
- Deputy Sumrall characterized the dog's condition as *"very thin"* and that he could see the dog's ribs.[104]
- While Deputy Bass knew Darious Leggett and Selena Howard from school, Deputy Sumrall did not know Darious (he knew Ms. Howard from a local business).[105] Sumrall had arrested Antrinet Leggett some time before.[106]
- Deputies Bass and Sumrall had no knowledge regarding Leggett's motivation for his aggressive hostility.
- Deputies Bass and Sumrall had no opportunity to check any of the three plaintiffs for weapons, or to ascertain if there were weapons nearby.
- Deputies Bass and Sumrall had no knowledge whether there was someone else in the house.

---

[100] Forrest County Sheriff's Office, Narrative Report of Deputy Blake Bass, Case Number 201711423, dated 09/28/2017 [sic], CLT-HOWARD-000006.
[101] Deposition transcript of Chey Sumrall, dated 04/27/2020, p.12.
[102] Deposition transcript of Blake Smith, dated 04/27/2020, p. 8.
[103] Deposition transcript of Blake Smith, dated 04/27/2020, p. 8.
[104] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 30.
[105] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 17.
[106] Deposition transcript of Chey Sumrall, dated 04/27/2020, pp. 17-18.

- The scene was undoubtedly chaotic. The dogs were likely agitated (there was a second dog on the porch, in a cage[107]). At one point, Ms. Howard was on the telephone with the 911 operator, and can be heard screaming and yelling.[108]
- At some point during the altercation, Darious Leggett "unhook[ed] the dog"[109] from the tree.
- Ms. Howard was a third person at the scene, which necessitated that the deputies split their attention three ways, in order to manage a scene with at least three possible suspects, as they fought to control Mr. Leggett and his mother, while avoiding the dog(s).
- As Leggett escalated his aggressive resistance, Deputy Bass deployed his TASER.[110]
- Bass reported that the distance between him and Mr. Leggett when he deployed was *"5 FT"*, and that the probe spread on Leggett's body was *"5 INCH"[sic]*.[111,112]
- After Leggett fell, he reportedly continued to resist before complying with deputies' commands.[113]
- While both deputies were equipped with TASER conducted energy weapons, reportedly only Deputy Bass deployed his (i.e., actually fired his cartridge), and then reportedly only against Mr. Leggett. Deputy Bass utilized one TASER cartridge.[114]
- At some point during the deputies' attempt to arrest her son, Ms. Leggett interfered physically, pushing herself between her son and the deputies.[115]
- During the altercation, the loose dog was *"biting at"* Deputy Bass, so Sumrall removed his TASER cartridge,[116] and sparked his TASER at the dog in an

---

[107] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 16.

[108] Audio file *audio.wav (2)*, undated, [length 00:12:46].

[109] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 18.

[110] Forrest County Sheriff's Office, Narrative Report of Deputy Blake Bass, Case Number 201711423, dated 09/28/2017 [sic], CLT-HOWARD-000006.

[111] Forrest County Sheriff's Office, M26 Advanced TASER [sic] Use Report of Blake Bass, incident date 09/27/2017, CLT-HOWARD-000017 – CLT-HOWARD-000018.

[112] This is generally consistent with expected probe spread; as discussed, *infra*, X26P probes spread at a rate of approximately 12 inches for every 7 feet of travel down range. At an estimated 3- to 5-foot range, probes can be expected to spread approximately 5 to 8 inches on a stationary target. The spread is less predictable on a moving target.

[113] Forrest County Sheriff's Office, Narrative Report of Deputy Blake Bass, Case Number 201711423, dated 09/28/2017 [sic], CLT-HOWARD-000006.

[114] Forrest County Sheriff's Office, M26 Advanced TASER [sic] Use Report of Blake Bass, incident date 09/27/2017, CLT-HOWARD-000017 – CLT-HOWARD-000018.

[115] Forrest County Sheriff's Office, Narrative Report of Deputy Blake Bass, Case Number 201711423, dated 09/28/2017 [sic], CLT-HOWARD-000006.

[116] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 33.

effort to get it to stop biting.[117] He does not remember how many times he sparked it.[118]

- Sumrall testified that he never deployed the "*prongs*" from his TASER.[119]

This incident escalated quickly. While the timing is approximate, the record indicates that within a few minutes of their arrival, Deputies encountered an increasingly aggressive, non-compliant, Darious Leggett. As they attempted to deal with the situation that was developing by arresting Mr. Leggett, they were interfered with by Ms. Leggett. Without knowledge of the presence or absence of weapons or other individuals, or the reason that Mr. Leggett was apparently so aggressive, Deputy Bass utilized his TASER when he observed Leggett pushing Deputy Sumrall.

## 10. TASER FUNCTION.[120]

Due to the use of TASERs during the events that gave rise to this case, a discussion of TASER technology is in order.[121] There were two different TASER models involved in this case, and each is described and discussed, *infra*.

TASER CEW Historical Context. The initial technology which led to the current crop of TASER conducted energy weapons was developed in the 1970s, and continued through the development of the first TASER CEW that was specifically intended for law enforcement use, and to today's crop of TASER conducted energy weapons.

Consider the following timeline:

- In 1974, what can be considered the first "TASER", the TF-76, was available.[122] Because it utilized a gunpowder propellant, it was ruled to be a firearm by BATF,[123] making it very difficult to market.
- In 1994, the Air TASER Model 34000 was developed. However, due to contractual and non-compete issues, it could not generally be sold to law enforcement agencies until after February of 1998.[124] By then, the manufacturer had determined it was too low powered for successful law

---

[117] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 25.

[118] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 33.

[119] Deposition transcript of Chey Sumrall, dated 04/27/2020, p. 33.

[120] Deputy Bass deployed his X26P TASER probes during this incident. Because there are allegations that Deputy Sumrall also deployed his TASER X26E probes, some of the following will refer to characteristics of the X26E model TASER device. I note that Deputy Sumrall specifically denies deploying probes.

[121] This discussion of TASER technology and attendant issues is intended to assist the reader with understanding some of the concepts that inform my opinions in this matter. An understanding of the underlying technology and TASER operational issues will assist the reader in assessing various aspects of this case.

[122] Due to its shape and configuration, this model was colloquially referred to as the *dustbuster* model, after a household vacuum.

[123] Bureau of Alcohol, Tobacco, and Firearms.

[124] A few agencies purchased the Air TASER 34000 before the 1998 date, leading to litigation, which forced the cessation of law enforcement sales.