## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**SELENA HOWARD,** *et al.*                                    **PLAINTIFFS**

**v.**                              **CIVIL ACTION NO. 2:19-CV-84-KS-MTP**

**FORREST COUNTY,** *et al.*                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [48]. Specifically, the Court grants the motion as to:

- Selena Howard's claims of unlawful seizure, false arrest, and false imprisonment against the individual Defendants;

- Selena Howard's claim of excessive force against the individual Defendants;

- Plaintiffs' First Amendment retaliation claims against the individual Defendants;

- Selena Howard's equal protection claim against the individual Defendants;

- Plaintiffs' fabrication/misrepresentation of evidence claims;

- Plaintiffs' Section 1981 claims;

- Plaintiffs' Section 1985 claims;

- Plaintiffs' claims against Forrest County.

The Court denies the motion as to:

- Darious and Antrinett Leggett's claims of unlawful seizure, false arrest, and false imprisonment against the individual Defendants;

- Darious and Antrinett Leggett's claims of excessive force against the individual Defendants; and

- Darious and Antrinett Leggett's equal protection claims against the individual Defendants.

The Court **denies** Plaintiffs' Motion for Summary Judgment [50].

## I. BACKGROUND

Defendants Blake Bass[1] and Chey Sumrall, deputies of the Forrest County Sheriff's Department, investigated a tip that a dog was tied to a tree without food or water. When the officers arrived at the residence, they observed a dog tied to a tree without food or water, as they had been told. Three people were present at the house: Plaintiffs Darious Leggett, Selena Howard, and Antrinett Leggett. There are numerous factual disputes regarding what happened during the encounter, but ultimately the officers shot Darious in the groin with a taser and arrested him and Antrinett for disorderly conduct and resisting/obstructing arrest. Plaintiffs filed this lawsuit, asserting a wide variety of claims against Bass, Sumrall, and Forrest County under 42 U.S.C. § 1983. The parties filed cross-motions for summary judgment, which the Court now addresses.

## II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] Blake Bass changed his name to Blake Smith after this case was filed, but the parties have continued to refer to him by his previous name. The Court will likewise do so, to prevent any confusion in the record.

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

When parties file cross-motions for summary judgment, the Court is not required to finally resolve the case by granting summary judgment in favor of one side or the other. *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). Rather, each

motion is addressed on its own merits under the applicable standard. *Id.*

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [48]

**A.    *Claims Against the Individual Defendants***

The individual Defendants, Chey Sumrall and Blake Bass, argue that they are entitled to qualified immunity from liability against Plaintiffs' claims. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "Although nominally a defense, the plaintiff has the burden to negate the defense once properly raised." *Poole v. Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

There are two steps in the Court's analysis. First, the Court determines whether the defendant's "conduct violates an actual constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Second, the Court must "consider whether [the defendant's] actions were objectively unreasonable in the light of clearly established law at the time of the conduct in question." *Id.* The Court may address either step first. *Pearson*, 555 U.S. at 236. "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brumfield*, 551 F.3d at 326. The Court "applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established

at the time of the defendant's actions." *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007).[2]

### 1.   *Unlawful Seizure, False Arrest, False Imprisonment*

Plaintiffs' claims of unlawful seizure, false arrest, and false imprisonment all arise from the Fourth Amendment right to be free from unreasonable seizure of one's person. "The Fourth Amendment guarantees the right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . and that no warrants shall issue, but upon probable cause." *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting U.S. CONST. amend. IV). Therefore, "[t]o remain within the bounds of the Fourth Amendment, a warrantless arrest must be supported by probable cause." *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018). Accordingly, to prevail on a § 1983 claim for false arrest or false imprisonment, Plaintiffs must prove that Defendants Bass and Sumrall did not have probable cause to arrest them. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th Cir. 2004).

"Probable cause is established by facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is

---

[2] Generally, each Defendant's "entitlement to qualified immunity must be considered on an *individual* basis." *Randle v. Lockwood*, No. 16-50393, 2016 U.S. App. LEXIS 20326, at *11 n. 7 (5th Cir. Nov. 10, 2016) (citing *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007)). Here, both individual Defendants were aware of the same facts. Therefore, the Court will consider their entitlement to qualified immunity in tandem, as the parties have done in briefing.

committing, or is about to commit an offense." *Arizmendi*, 919 F.3d at 897. "When considering what a reasonable person would have concluded, we take into account the expertise and experience of the law enforcement officials." *United States v. Nunez-Sanchez*, 478 F.3d 663, 667 (5th Cir. 2007). It doesn't matter whether the offense is a felony or a misdemeanor, or whether the offense was committed in the officer's presence. *Sam*, 887 F.3d at 715 n. 6 (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 149 L. Ed. 2d 549 (2001); *Fields v. City of S. Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir. 19991)). Likewise, it doesn't matter whether the officers had probable cause to arrest the plaintiff for the crime that was eventually charged. *Cole v. Carson*, 802 F.3d 752, 764 (5th Cir. 2015). Rather, "to make out a Fourth Amendment claim under either a 'false arrest' or 'illegal detention' theory, the relevant actors must not be aware of facts constituting probable cause to arrest or detain the person for *any* crime." *Id.*

Plaintiffs' claim of unlawful seizure, false arrest, and false imprisonment apparently arise from the actual arrests, rather than the officers' brief detention of the Plaintiffs to question them about the dog. Defendants argued that neither the arrests nor the investigatory detention constituted an unlawful seizure. In response, Plaintiffs conceded that the officers had the right to briefly detain Plaintiffs to ask about the dog's welfare. Therefore, the Court will focus its discussion on the arrests.

### a.   Selena Howard

First, it appears to be undisputed that Selena Howard was not arrested or

otherwise seized. To the extent Plaintiffs asserted any unlawful seizure, false arrest, or false imprisonment claim against the individual Defendants as to Selena Howard, the Court grants Defendants' motion for summary judgment as to that claim.

### b.   Darious Leggett

Defendants argue that the officers had probable cause to arrest Darious Leggett for animal neglect. Plaintiffs disagree. In briefing, the parties cited Miss. Code Ann. § 97-41-1, but that statute only criminalizes cruelty to living creatures "[e]xcept as otherwise provided in Section 97-41-16 for a dog or cat." MISS. CODE ANN. § 97-41-1. For domesticated dogs and cats, the Mississippi Dog and Cat Pet Protection Law of 2011 applies. *See* MISS. CODE ANN. § 97-41-16. That statute provides, in relevant part: "If a person shall intentionally or with criminal negligence . . . deprive of adequate shelter, food or water . . . any domesticated dog or cat, or cause any person to do the same, then he or she shall be guilty of the offense of simple cruelty to a domesticated dog or cat," which is a misdemeanor. MISS. CODE ANN. § 97-41-16(2)(a). Neither side of this dispute has discussed the elements of this crime or cited any case law regarding "criminal negligence" in this context. Regardless, there are numerous factual disputes that preclude summary judgment.

Defendant Sumrall testified that a county employee told them that she had heard from another county employee that a dog was tied to a tree with no food or water at Plaintiffs' address. Exhibit A to Motion for Summary Judgment at 4, *Howard v. Forrest County*, No. 2:19-CV-84-KS-MTP (S.D. Miss. May 26, 2020), ECF

7

No. 48-1. According to Defendant Bass, the dog was "very skinny." Exhibit B to Motion for Summary Judgment at 3, *Howard v. Forrest County*, No. 2:19-CV-84-KS-MTP (S.D. Miss. May 26, 2020), ECF No. 48-2. He testified that its "ribs were . . . showing." *Id.* at 9. But Sumrall admitted that the officers did not know how long the dog had been tied to the tree, Exhibit A [48-1], at 5, how long its water bowl had been empty, *id.* at 6, or whether the dog was malnourished. *Id.* at 9. He also admitted they had no evidence that Darious Leggett had intentionally deprived the dog of food, water, or shelter. *Id.* at 6-7. When the officers asked Leggett to get the dog's food, he brought back an empty container, and the officers concluded that there was no dog food on the premises. *Id.* at 9.[3]

However, Selena Howard testified that the dogs did not look skinny, and that they fed them once or twice a day. Exhibit D [48-4], at 5. Likewise, Antrinett Leggett testified that the dogs did not look skinny, and that their bones were not showing. Exhibit F to Motion for Summary Judgment at 7, *Howard v. Forrest County*, No. 2:19-CV-84-KS-MTP (S.D. Miss. May 26, 2020), ECF No. 48-6. Finally, Darious Leggett testified that the dogs did not look skinny, and that their ribs were not showing. Exhibit E to Motion for Summary Judgment at 8, *Howard v. Forrest County*, No. 2:19-CV-84-KS-MTP (S.D. Miss. May 26, 2020), ECF No. 48-5.

Based on this conflicting evidence, the Court finds that there are genuine

---

[3] Defendants also note that there was an abrasion on the dog's neck, where it had outgrown its collar. *See* Exhibit D to Motion for Summary Judgment at 5, *Howard v. Forrest County*, No. 2:19-CV-84-KS-MTP (S.D. Miss. May 26, 2020), ECF No. 48-4. They have not directed the Court to any evidence that they were aware of this abrasion at the time of the arrest.

disputes of material fact as to 1) whether Defendants Sumrall and Smith had probable cause to believe that Darious Leggett had, "with criminal negligence," deprived the dog of "adequate shelter, food, or water" as required by Miss. Code Ann. § 97-41-16(2)(a); and 2) whether the individual Defendants' arrest of Darious Leggett was objectively reasonable in light of the facts known to them at the time.

Defendants also argue that Smith and Sumrall had probable cause to arrest Darious Leggett for disorderly conduct and resisting arrest. However, under Mississippi law, "[t]he offense of resisting arrest presupposes a lawful arrest." *Taylor v. State*, 396 So. 2d 39, 42 (Miss. 1981) (quoting *Smith v. State*, 208 So. 2d 746, 747 (Miss. 1968)). "A person has the right to use reasonable force to resist an unlawful arrest." *Id.* Therefore, because there are genuine disputes of material fact as to the lawfulness of the underlying arrest, there are likewise genuine disputes of material fact as to the charges of resisting arrest and disorderly conduct.[4]

Accordingly, the Court denies Defendants' Motion for Summary Judgment [48] as to the claims of unlawful seizure, false arrest, and false imprisonment asserted by Darious Leggett against the individual Defendants.

---

[4] The record also contains substantial evidence that Defendants Sumrall and Bass intentionally provoked Leggett, causing the incident. Antrinett Leggett testified that one of the officers said to her: "I ought to get you for the little stunt you pulled the last time I had you in the back of my car." Exhibit F [48-6], at 6. She claims to have not known what he was talking about. *Id.* She also testified that Sumrall "was very aggravated and had an attitude." *Id.* at 7. He allegedly got in Darious Leggett's face and told him to "[d]o something," "trying to get a rise out of him, trying to make him . . . swing or something." *Id.*; *see also* Exhibit E [48-5], at 7. The Court does not suggest that this alleged provocation justifies Leggett's alleged actions, but it highlights the genuine disputes of material fact in this case.

### c.    Antrinett Leggett

Defendants argue that they had probable cause to arrest Antrinett Leggett for disorderly conduct or resisting arrest because she tried to intervene and prevent the officers from arresting Darious Leggett. In response, Plaintiffs argue that Antrinett Leggett had the right to intervene to protect her son from an unlawful arrest.

Defendant Bass testified that Antrinett Leggett "was coming over there and trying to push" Defendant Sumrall as he arrested Darious Leggett. Exhibit B [48-2], at 5. Bass testified that he ordered her to step back, but she did not comply. *Id.* at 7. Therefore, he arrested her "for getting in the middle of the fight and actually pushing" the officers while they were trying to arrest Darious Leggett. *Id.* She eventually complied, however, because when they arrested her she "was off to the side . . . ." *Id.*

Antrinett Leggett denies that she intervened. She testified that she "stood right beside Darious just a little bit, maybe . . . not even 3 feet," but that she "wasn't directly in between" him and the officers. Exhibit F [48-6], at 8. According to her, she did not "try to put [her] hands . . . in between Darious and the officers," or "try to push the officers away . . . ." *Id.* at 9. Moreover, she denies that the officers asked her to move. *Id.* She claims that she just stood there with her hands up, telling the officers that they didn't want a problem. *Id.* She eventually tried to call her mother, but she claims that one of the officers shot her with a taser, snatched the phone from her hand, and arrested her. *Id.* at 9-10.

Darious Leggett testified that Antrinett did, in fact, "get between" him and the

officers, but that she did not touch them. Exhibit E [48-5], at 9. He said; "She just extended her arm, you know, like, 'Please.' She's just pleading like, 'Please don't do this. Please don't do this,' you know." *Id.* Likewise, Selena Howard testified that Antrinett Leggett "came in the middle because [Bass] had the taser pointed at [Darious Leggett]." Exhibit D [48-4], at 8. She said that Antrinett "asked them to please leave, we don't want any problems. And when she pulled out her phone," Sumrall allegedly pushed her down without issuing any verbal commands. *Id.*

Mississippi's disorderly conduct statute provides, in relevant part:

Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for violation of the law, to:

> (a) Move or absent himself . . . from the immediate vicinity where the request, command or order is given, or

> **\* \* \***

> (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor . . . .

Miss. Code Ann. § 97-35-7(1).

Based on the contradictory testimony in the record, there is a genuine dispute of material fact as to 1) whether Defendants Sumrall and Smith had probable cause to believe that Antrinett Leggett had violated the disorderly conduct statute, and 2)

whether the individual Defendants' arrest of Antrinett Leggett was objectively reasonable in light of the facts known to them at the time.

Mississippi's obstructing/resisting arrest statute provides: "It shall be unlawful for any person to obstruct or resist by force, or violence, or threats, or in any other manner, his lawful arrest or the lawful arrest of another person . . . , and any person doing so shall be guilty of a misdemeanor . . . ." MISS. CODE ANN. § 97-9-73. As noted above, there is a genuine dispute of material fact as to the lawfulness of Defendants' arrest of Darious Leggett. Moreover, there is a genuine dispute of material fact as to whether Antrinett Leggett actually obstructed or resisted any arrest. Therefore, there is a genuine dispute of material fact as to 1) whether Defendants Sumrall and Smith had probable cause to believe that Antrinett Leggett had violated the obstructing/resisting arrest statute, and 2) whether their arrest of Antrinett Leggett was objectively reasonable in light of the facts known to them at the time.

For all these reasons, the Court denies Defendants' Motion for Summary Judgment [48] as to the claims of unlawful seizure, false arrest, and false imprisonment asserted by Antrinett Leggett against the individual Defendants.

2.  *Excessive Force*

"[T]he right to be free from excessive force during a seizure is clearly established." *Poole*, 691 F.3d at 627; *see also Newman v. Guidry*, 703 F.3d 757, 763 (5th Cir. 2012); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008). Moreover, the Fifth

Circuit has specifically held that "a constitutional violation occurs when an officer . . . strikes . . . an arrestee who is not actively resisting arrest." *Darden v. City of Forth Worth, Tex.*, 880 F.3d 722, at 731 (5th Cir. 2018). To prove a claim of excessive force, Plaintiffs must present evidence of "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Romero v. City of Grapevine, Tex.*, 888 F.3d 170, 176 (5th Cir. 2018).

> Though some injuries are so minor that they are insufficient to satisfy the injury element as a matter of law, an injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible – that is, objectively unreasonable under the circumstances. The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. Specifically, the court should consider the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Bush*, 513 F.3d at 501.

### a.   Selena Howard

It appears to be undisputed that the individual Defendants did not apply any force to Plaintiff Selena Howard. Therefore, to the extent Plaintiffs' asserted any excessive force claim as to Selena Howard, the Court grants Defendants' motion for summary judgment as to that claim.

### b.   Darious Leggett

Defendants argue that it was not unreasonable for Bass to use his taser on

13

Darious Leggett to gain compliance under the circumstances. Bass testified that Darious was "very aggressive," and that he was "[y]elling and cussing." Exhibit B [48-2], at 5. Sumrall was trying to arrest Leggett, and the two of them fell off the porch. Exhibit A [48-1], at 7. Sumrall said: "He would not give me his hands. Every time I tried to get one of his hands, he pulled away. He actually tried to get away from me, as in run." *Id.* at 9. Sumrall continued: "I simply remember me and Darious falling off the porch while I was trying to arrest him. I was still struggling to get his hands behind his back after I told him to put his hands behind his back." *Id.*[5]

Bass testified that Sumrall was trying to put cuffs on Darious, and that Darious was "actually swinging as we were giving verbal commands to 'Stop, put your hands behind your back.'" Exhibit B [48-2], at 5. At that point, Bass used the taser on Darious. *Id.*; Exhibit A [48-1], at 9-10. Bass admitted, however, that Darious never threatened him or Sumrall. Exhibit B [48-2], at 5. Likewise, Sumrall admitted that Darious "never made contact, as physical contact, but . . . he had an aggressive stance." Exhibit A [48-1], at 9. The incident report prepared by the officers stated that Darious "immediately was aggressive toward both deputies," and that he "continued to be aggressive and curse at both deputies." Exhibit C to Motion for Summary Judgment at 6, *Howard v. Forrest County*, No. 2:19-CV-84-KS-MTP (S.D. Miss. May 26, 2020), ECF No. 48-3. It further provided that Darious "attempted to fight with"

---

[5] Although he testified in his deposition that he did not know how they fell off the porch, Sumrall swore in a Justice Court affidavit that Darious "jumped off the porch." Exhibit I to Motion for Summary Judgment at 1, *Howard v. Forrest County*, No. 2:19-CV-84-KS-MTP (S.D. Miss. May 26, 2020), ECF No. 48-9.

the officers. *Id.*

Defendants also note that while all this was happening, two dogs were barking and acting "protective." Exhibit E [48-5], at 13. Also, Selena Howard was on the phone with dispatch, asking for help. Exhibit D [48-4], at 9. Finally, they contend that Antrinett had begun to intervene and prevent them from arresting Darious. Exhibit B [48-2], at 5. They argue that all of these factors created an element of "chaos" that justified the use of force.

Although Darious Leggett admitted that he used profane language, he denied that he was the aggressor. Exhibhit E [48-5], at 9. Leggett testified that Sumrall had a "hostile attitude." *Id.* at 7. He said: "[Sumrall] just had this . . . attitude. He was trying to provoke me like he was trying to get me to swing at him. . . . [H]e . . . leaned in like, 'What you want to do? Do something. I know you want to do something.'" *Id.* Leggett testified, "I didn't try to get aggressive with him," *id.* at 8, and he denied that he got in Sumrall's face. *Id.* at 9. According to him, Sumrall did not give him any verbal commands or state that he was under arrest. *Id.* Rather, Sumrall "just started like grabbing towards [him] or trying to grab [him]." *Id.* Leggett claims that Sumrall "shoved" him off the porch. *Id.* Leggett further claims that right before Sumrall shot him with the taser, he was standing in the yard "with [his] hands and [his] legs sprawled out," "hands to the sky, more or less." *Id.* at 10. He claims that he was not moving. *Id.* Then, Bass shot Antrinett Leggett with a taser, and Darious moved to help her. *Id.* At that point, Sumrall shot Darious in the groin with the taser. *Id.*

15

Antrinett Leggett testified that Darious and the officers were yelling in each other's faces. Exhibit F [48-6], at 9. She testified that the officer who shot Darious first aimed the taser at his head and them redirected "it to his private area." *Id.* at 10. Finally, she testified that Sumrall "came inside the jail and apologized later after it was over, just saying that he was sorry, it should have – you know, he was sorry for what happened." *Id.* at 11.

Selena Howard testified that after Sumrall tried to provoke Darious, Darious "went to walk away," but Sumrall "started to try to grab him." Exhibit D [48-4], at 7. She said that Sumrall "kept trying to grab his arm, and Darious put his arms up and asked them . . . what was he doing, was he under arrest." *Id.* However, according to Howard, neither officer "stated if he was under arrest." *Id.* She testified that Darious continued to back up, and Sumrall "went to grab him again, and he pushed him off the porch." *Id.* After Darious had stood back up, Antrinett walked between him and the officers. *Id.* at 8. According to Howard, Sumrall shoved Antrinett down when she started talking on the phone, and Antrinett hit her head on a lawnmower. *Id.* Darious leaned down to check on Antrinett, and Bass shot him in the groin with a taser. *Id.* Howard claims that to this point, the officers had not stated that anyone was under arrest or issued any verbal commands. *Id.* at 7-8, 10. Furthermore, she testified that at the time Bass shot Darious with the taser, Darious "had his hands in the air." *Id.* at 10.

The Court finds that the contradictory evidence cited above creates a genuine

dispute of material fact as to 1) whether Darious Leggett was actively resisting arrest at the time he was shot with a taser, 2) whether the force employed by the officers was clearly excessive to the need, and 3) whether the forced employed by the officers was objectively unreasonable. Accordingly, the Court denies Defendants' Motion for Summary Judgment [48] as to Darious Leggett's excessive force claim against the individual Defendants.

### c.   Antrinett Leggett

Finally, Defendants deny that they employed force in their arrest of Antrinett Leggett, and they argue that any force they employed was justified under the circumstances. However, the record contains evidence from which a jury could reasonably conclude 1) that the individual Defendants utilized force in their arrest of Antrinett Leggett, 2) that Antrinett Leggett was not actively resisting arrest at the time the force was applied, 3) that the force applied was clearly excessive to the need, and 4) that the forced applied was objectively unreasonable.

Darious Leggett testified that while his mother, Antrinett Leggett, was on the phone trying to get help, Sumrall "shoved and pushed her," although she was not physically engaging the officers or otherwise interfering with their actions. Exhibit E [48-5]. According to Darious, "[s]he tripped over the step, and . . . her head hit the lawnmower." *Id.* Likewise, Antrinett testified that she did not try to physically intervene or interfere with the officers. Exhibit F [48-6], at 9. But she contends that one of the officers, fired his taser at her, grazing her hand. *Id.* at 10. She claims that

17

she then tried to use her phone to call for help, and one of the officers "snatched" her phone from her, grabbed her by the arms, and dragged her to the car in her nightgown. *Id.* at 9. Finally, Selena Howard also testified that Antrinett Leggett never resisted arrest or interfered in the arrest of Darious Leggett, but that Sumrall pushed her to the ground and tased her. Exhibit D [48-4], at 9-10.

Defendants deny that either officer used his taser on Antrinett, citing the officers' testimony, and a use-of-force report that provides that only one taser cartridge was used during the encounter. However, it is not the Court's job to make credibility determinations or weigh the evidence. *Deville*, 567 F.3d at 164. Rather, the Court must view the facts and the inferences to be drawn from them in the light most favorable to Plaintiffs. *Sierra Club*, 627 F.3d at 138. Regardless, even if neither officer used his taser on Antrinett Leggett, there is still evidence that one of them shoved her to the ground while she was not interfering with the arrest. Accordingly, the Court finds that there are genuine disputes of material fact as to 1) whether the individual Defendants utilized force in their arrest of Antrinett Leggett, 2) whether Antrinett Leggett was actively resisting arrest at the time the force was applied, 3) whether the force applied was clearly excessive to the need, and 4) whether the forced applied was objectively unreasonable. The record is also unclear as to which officer applied the force to Antrinett Leggett. Therefore, the Court denies Defendants' Motion for Summary Judgment [48] as to Antrinett Leggett's excessive force claim against the individual Defendants.

3.    *First Amendment*

Defendants argued that Plaintiffs do not have enough evidence to support a First Amendment claim arising from the subject arrests. "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017).

> To prevail on a § 1983 claim for First Amendment retaliation, [a plaintiff] must show that (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct.

*Id.*

Among other things, Defendants argued that Plaintiffs can not prove that the officers' actions were motivated by Plaintiffs' speech. Plaintiffs provided only a cursory response to this aspect of Defendants' motion. They only argued that Selena Howard "did not exercise her free speech rights and tell the Defendants not to enter or leave the house," and that she was not arrested. Therefore, Plaintiffs contend that Defendants must have arrested Darious and Antrinett because of their speech.

The Court agrees with Defendants that Plaintiffs have not presented any evidence that the arrests of Darious Leggett and Antrinett Leggett were substantially motivated by their speech. Plaintiffs' assertion that Selena Howard did not engage in any protected speech is contradicted by the record. It is undisputed that Howard was on the phone, speaking with dispatch throughout the encounter. Moreover, Plaintiffs

19

admitted in briefing that Howard repeatedly told the officers that the dogs belonged to her. Beyond this argument by inference from Howard's alleged silence, Plaintiffs have not directed the Court to any evidence that Bass and Sumrall were motivated by Plaintiffs' speech. Therefore, the Court grants Defendants' Motion for Summary Judgment [48] as to Plaintiffs' First Amendment retaliation claims against the individual Defendants.

      4.   *Equal Protection*

Plaintiffs asserted an equal protection claim, asserting that the officers' actions were motivated by race. To prevail on an equal protection claim, Plaintiffs must prove "that [they] received different treatment from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001).

First, Defendants argue that any equal protection claim asserted by Selena Howard fails because she was not arrested and she has not alleged membership in a protected class. Defendants note that Selena Howard is white, while Darious and Antrinett Leggett are black. Plaintiffs did not address this argument in briefing. A "party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). "The court has no duty to search the record for material fact issues." *Id.* Accordingly, the Court finds that Plaintiffs have failed to create a genuine dispute of material fact as to any equal protection

claim asserted by Selena Howard and grants Defendants' Motion for Summary Judgment [48] in that respect.

As for Darious and Antrinett Leggett's equal protection claims, Defendants argue that Plaintiffs can not prove that the officers were motivated by race. In response, Plaintiffs argue that the officers arrested Darious and Antrinett, who are black, but they did not arrest Selena Howard, who is white.

The Court finds that there is a genuine dispute of material fact as to whether the officers were motivated by Darious and Antrinett Leggett's race. Defendants contend that Darious and Antrinett's behavior was different than Howard's. In other words, Defendants argue that Darious and Antrinett resisted arrest and refused to comply with the officers' commands, while Howard did not. However, as noted above, there are genuine disputes of material fact as to whether Darious and Antrinett actually resisted arrest. If a jury believes Plaintiffs' version of events, they could reasonably conclude that the only difference between the Leggetts and Howard is their race, rather than their behavior. Accordingly, the Court denies Defendants' Motion for Summary Judgment [48] as to Darious and Antrinett Leggett's equal protection claims.

### 5.      *Fabrication/Misrepresentation of Evidence*

Plaintiffs apparently asserted a claim based on the alleged fabrication and/or misrepresentation of evidence. Defendants argued that there was no evidence to support such a claim. In response, Plaintiffs did not address this argument or

otherwise direct the Court to record evidence supporting such claims.

A "party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.* "The court has no duty to search the record for material fact issues." *Id.* Accordingly, the Court finds that Plaintiffs have failed to create a genuine dispute of material fact on this claim and grants Defendants' Motion for Summary Judgment [48] as to Plaintiffs' claims of fabrication and/or misrepresentation of evidence.

**B.    *Racial Discrimination***

  *1.    Section 1981*

Plaintiffs asserted a claim under 42 U.S.C. § 1981 for racial discrimination. The statute provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To establish a claim under Section 1981, a plaintiff must prove: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir. 1994).

Defendants argue that Selena Howard is not a member of a racial minority and, therefore, can not assert a Section 1981 claim. They also argue that Plaintiffs

failed to present any evidence that the officers intentionally discriminated against Darious and Antrinett Leggett.

Plaintiffs did not address these claims in briefing. They have not articulated the basis of their Section 1981 claim or clarified which actions by the individual Defendants constituted the alleged racial discrimination. Moreover, they have not argued that the alleged discrimination concerned one of the activities enumerated in the statute. As noted above, a "party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp.*, 612 F.3d at 857. "The court has no duty to search the record for material fact issues," or to make a party's arguments for them. *Id.* Accordingly, the Court finds that Plaintiffs have failed to create a genuine dispute of material fact on this claim and grants Defendants' Motion for Summary Judgment [48] as to Plaintiffs' claims of racial discrimination under 42 U.S.C. § 1981.

2.   *Section 1985*

To prevail on a Section 1985 claim, Plaintiffs must prove that Defendants "(1) conspired; (2) for the purpose of depriving [them], either directly or indirectly, . . . of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) took or caused action in furtherance of the conspiracy; which (4) injured [Plaintiffs] or deprived [them] of . . . rights and privileges as a United States citizen." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

Citing the intra-corporate conspiracy doctrine, Defendants argue that they can

23

not conspire with one another because the individual Defendants are employees of Defendant Forrest County. Plaintiffs did not respond to this argument in briefing.

Defendants are correct. Section 1985(3) requires "two or more persons" to form a conspiracy. 42 U.S.C. § 1985(3). Therefore, "[u]nder § 1985(3), a corporate entity and its employees constitute a 'single legal entity which is incapable of conspiring with itself.'" *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (quoting *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994)); *see also Tuskan v. Jackson County, Miss.*, 2016 WL 3148629, at *4 (S.D. Miss. May 12, 2016). The Court grants Defendants' Motion for Summary Judgment [48] as to Plaintiff's § 1985 claim.

### C.    *Claims Against the County*

The Fifth Circuit provided the following summary of the law concerning municipal liability under § 1983:

> A municipality is not liable under § 1983 on the theory of respondeat superior, but only for acts that are directly attributable to it through some official action or imprimatur. To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.

> Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy.

> Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.
>
> A plaintiff must show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.

*James v. Harris County*, 577 F.3d 612, 617-18 (5th Cir. 2009) (punctuation and citations omitted).

Defendants argue that Plaintiffs can not prove any constitutional violations by the individual Defendants and, therefore, the County can not be liable. The Court disagrees. As noted above, there are multiple genuine disputes of material fact as to whether the individual Defendants violated Plaintiffs' constitutional rights.

Defendants also argue that Plaintiffs have not demonstrated that an official policy or custom of the County was the moving force of any violation. In response, Plaintiffs argue that the County's failure to train its officers regarding animal welfare and neglect was the moving force behind the alleged constitutional violations.

"The failure to train can amount to a policy if there is a deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of notices in law enforcement." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009). To prevail on a failure-to-train theory, Plaintiffs must prove "(1) that the municipality's training procedures were inadequate, (2) that

the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Ratliff v. Aransas County, Tex.*, 948 F.3d 281, 285 (5th Cir. 2020).

"[D]eliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). Plaintiff must show "that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010).

Ordinarily, this standard "requires a pattern of similar conduct." *Jordan v. Brumfield*, 687 F. App'x 408, 415-16 (5th Cir. 2017). But a plaintiff can also "establish deliberate indifference by showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge v. St. Tammany Parish*, 336 F.3d 363, 373 (5th Cir. 2003). The single-incident exception is narrow, though, and it only applies "where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.*

Plaintiffs' failure-to-train claim fails because it is undisputed that the

individual Defendants did, in fact, receive training regarding animal welfare and neglect. Bass testified that he received training at the law enforcement training academy about animal welfare and neglect, Exhibit B [48-2], at 10, but he had not received any additional training since then. *Id.* at 3-4. Likewise, Sumrall testified that he received training at the law enforcement training academy from an "animal control person," who "comes and teaches a class on animal welfare and animal neglect and animal abuse." Exhibit A [48-1], at 4. Plaintiffs have not offered any evidence regarding the content of these training courses, disputed their existence, or offered any argument or evidence that this training failed to meet the state's minimum requirements for law enforcement officers. Likewise, they have not argued or offered any evidence that this training "was inadequate to enable the officers to deal with the usual and recurring situations faced by . . . peace officers." *O'Neal v. City of San Antonio*, 344 F. App'x 885, 888 (5th Cir. 2009). Even if Plaintiffs had demonstrated that the academy training was inadequate, they have not demonstrated that the County's failure to provide additional training was deliberately indifferent to the risk of a constitutional violation.

Therefore, the Court finds that Plaintiffs have not presented sufficient evidence to create a genuine dispute of material fact regarding their claim that the County's alleged failure to train its officers was the moving force behind the constitutional violations. *See, e.g. Williams v. City of McComb*, 2015 WL 5712758, at *5 (S.D. Miss. Sept. 29, 2015); *Kilgo v. Tolar*, 2015 WL 3484533, at *4 (N.D. Miss.

June 2, 2015); *Mayfield v. Brewer*, 2014 WL 5392464, at *13 (S.D. Miss. Oct. 22, 2014). Moreover, Plaintiffs have not articulated or presented evidence regarding any other County custom or policy. Therefore, the Court grants Defendants' Motion for Summary Judgment [48] as to Plaintiffs' § 1983 claims against the County.

### IV. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [50]

Plaintiffs made two arguments in their Motion for Summary Judgment [50]. First, they argued that the Defendants lacked probable cause to arrest any of the Plaintiffs. For the same reasons provided above, the Court finds that there are genuine disputes of material fact as to whether the officers had probable cause to arrest Darious and Antrinett Leggett, and it appears to be undisputed that the officers did not arrest Selena Howard. Therefore, the Court denies this aspect of Plaintiffs' motion.

Next, Plaintiffs argue that the County's failure to train the officers was the driving force behind the alleged constitutional violations. As discussed above, it is undisputed that the officers did, in fact, receive training regarding animal welfare and neglect at the Law Enforcement Training Academy. Plaintiffs have not argued or offered any evidence that this training was inadequate. *See Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (where officers received standard state certification and training and plaintiff presented no evidence that the training was inadequate, failure-to-train claim failed). Therefore, the Court denies Plaintiff's motion.

**V. CONCLUSION**

For the reasons provided above, the Court **grants in part and denies in part** Defendants' Motion for Summary Judgment [48]. Specifically, the Court grants the motion as to:

- Selena Howard's claims of unlawful seizure, false arrest, and false imprisonment against the individual Defendants;

- Selena Howard's claim of excessive force against the individual Defendants;

- Plaintiffs' First Amendment retaliation claims against the individual Defendants;

- Selena Howard's equal protection claim against the individual Defendants;

- Plaintiffs' fabrication/misrepresentation of evidence claims;

- Plaintiffs' Section 1981 claims;

- Plaintiffs' Section 1985 claims;

- Plaintiffs' claims against Forrest County.

The Court denies the motion as to:

- Darious and Antrinett Leggett's claims of unlawful seizure, false arrest, and false imprisonment against the individual Defendants;

- Darious and Antrinett Leggett's claims of excessive force against the individual Defendants; and

- Darious and Antrinett Leggett's equal protection claims against the individual Defendants.

The Court **denies** Plaintiffs' Motion for Summary Judgment [50].

SO ORDERED AND ADJUDGED this 5th day of August, 2020.

                                    /s/      Keith Starrett

                                                KEITH STARRETT
                                UNITED STATES DISTRICT JUDGE